**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ALLIANTGROUP, L.P. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-0479 |
| | § | |
| JEFFREY FEINGOLD, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Alliantgroup, L.P., a Texas limited partnership, sued its former employee, Jeffrey Feingold, a Massachusetts citizen, in Texas state court. Feingold had a contract with Alliantgroup that contained noncompetition, nonsolicitation, and nondisclosure provisions. Alliantgroup alleged that Feingold violated these contractual noncompetition provisions when he left Alliantgroup and went to work for a competitor, Kahn, Litwin, Renza & Co. ("KLR"). Alliantgroup also alleged that Feingold took customer lists and confidential or proprietary information and disclosed that information to KLR. Alliantgroup asserted claims under Texas law for breach of its employment contract with Feingold, misappropriation of confidential or proprietary information, and tortious interference with contractual relationships.

Feingold removed to this court on the basis of diversity jurisdiction. (Docket Entry No. 1). This court denied Alliantgroup's motion to remand, (Docket Entry No. 18), and denied Feingold's motion to dismiss for lack of personal jurisdiction. (Docket Entry No. 37). Alliantgroup filed an amended complaint on March 13, 2009 naming KLR as an additional defendant. (Docket Entry No. 23). In the amended complaint, Alliantgroup asserted claims for conversion, tortious interference, civil conspiracy, misappropriation of trade secrets, and violations of the computer fraud and abuse

act. (Docket Entry No. 23). Alliantgroup also alleged that KLR is vicariously liable for Feingold's actions. (*Id.*).

KLR has moved to dismiss the claims against it for lack of personal jurisdiction. (Docket Entry No. 34). Alliantgroup has responded, (Docket Entry No. 45), and KLR has replied, (Docket Entry No. 50). Based on a careful review of the pleadings; the motion, response, and reply; and the applicable law, this court grants KLR's motion to dismiss for lack of personal jurisdiction. The reasons are explained below.

**I.     Background**

Alliantgroup is a tax consulting firm with its primary office in Houston, Texas. KLR is a certified public accounting firm based in Rhode Island. Feingold lives in Massachusetts. In the fall of 2007, Feingold traveled to Houston for a job interview with Alliantgroup. Feingold and Alliantgroup's Senior Manager Director, Dhaval R. Jadav, signed an Employment Agreement on September 9, 2007. In the Employment Agreement, Feingold agreed to promote Research and Development Tax Credit Studies and other tax services on behalf of Alliantgroup, in exchange for salary and commission. The Agreement contained a choice-of-law, forum-selection and consent-to-personal jurisdiction clause, which stated that Texas law applied and that any disputes would be resolved in Houston, Harris County, Texas. (Docket Entry No. 33, Ex. A-1, Art. IX, ¶ F). The Agreement also contained noncompetition, nonsolicitation, and nondisclosure covenants. (*Id.*, Art. VII).

Feingold's work for Alliantgroup was primarily in Massachusetts, Rhode Island, and New York. Feingold's clients during his work for Alliantgroup included Seaman Paper Company of

Massachusetts, Inc. Feingold attempted to provide consulting services on Alliantgroup's behalf to Mini-Circuits, a New York company, but Mini-Circuits did not retain Alliantgroup.

On January 13, 2009, Feingold resigned from Alliantgroup and began working for KLR in its new Massachusetts office. In this lawsuit, Alliantgroup alleges that Feingold has been using the Research and Development Tax Credit information he obtained while employed by Alliantgroup and that Feingold has been soliciting Alliantgroup clients on KLR's behalf. Alliantgroup alleges that Feingold disclosed to KLR confidential information about Mini-Circuits and about Alliantgroup's billing structure. Alliantgroup alleges violations of the noncompetition, nonsolicitation, and nondisclosure provisions of Feingold's Employment Agreement, as well as the common-law torts of conversion, misappropriation, and tortious interference.

The parties engaged in expedited discovery, including taking Feingold's deposition. On April 28, 2009, this court held a hearing on Alliantgroup's motion for a preliminary injunction against Feingold. This court granted Alliantgroup's motion and on May 11, 2009 enjoined Feingold from, among other things, soliciting clients for which Feingold had provided or attempted to provide services during his employment with Alliantgroup. (Docket Entry No. 48).

KLR has moved to dismiss the claims against it for lack of personal jurisdiction. Alliantgroup has responded, arguing that KLR has substantial contacts with Texas and directed tortious actions at Alliantgroup in Texas.

## II.    The Legal Standards

### A.    Rule 12(b)(2)

KLR moves to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure. When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of

3

demonstrating facts sufficient to support jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)) (additional citations omitted). The court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001).

### B. Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and exercising such jurisdiction is consistent with due process. *Delgado v. Reef Resort, Ltd.*, 364 F3d 642, 644 (5th Cir. 2004). The Texas long-arm statute confers jurisdiction to the limits of due process. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008); *see* TEX. CIV. PRAC. AND REM. CODE ANN. § 17.041–.045; *see also Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). Due process permits the exercise of personal jurisdiction over a nonresident defendant when the defendant has "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."

*Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson*, 20 F.3d at 647). Alliantgroup has the burden of demonstrating facts sufficient to support personal jurisdiction by a Texas court over KLR.

The "minimum contacts" aspect of the analysis can be established through "contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Wilson*, 20 F.3d at 647. A court may exercise specific jurisdiction when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Gundle Lining Const. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 446 U.S. 408, 414 n.8 (1984); *Religious Tech. Ctr.*, 339 F.3d at 375; *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002)). To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Gundle Lining Const.,* 85 F.3d at 205; *Helicopteros Nacionales*, 466 U.S. at 414 n.8. Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzeqicz*, 471 U.S. 462, 475 (1985). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc*., 9 F.3d 415, 419 (5th Cir. 1993) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Specific jurisdiction requires a sufficient nexus between the nonresident defendant's contacts with the forum and the cause of action. *Rittenhouse v. Mabry*, 832 F.2d 1380, 1390 (5th Cir. 1987).

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state before a court may exercise general personal jurisdiction. *Helicopteros*, 466 U.S. at 414-15; *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987). The plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed to support specific jurisdiction. *Dalton v. R & W Marine*, 897 F.2d 1359, 1362 (5th Cir. 1990). "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.'" *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (additional citations omitted)).

### III.    KLR's Motion to Dismiss

#### A.    General Jurisdiction

Alliantgroup argues that general personal jurisdiction is present because KLR has "substantial contacts with Texas." Alliantgroup notes that KLR is a member of "the Leading Edge Alliance (LEA), an affiliation of CPA firms throughout the United States and abroad." (Docket Entry No. 45, at 1). The LEA allows KLR "to offer services and expertise to almost any client situation around the world." (*Id.*). Two of the CPA firms belonging to the LEA are located in Texas. (*Id.* at 2). Alliantgroup also points to two occasions when KLR contacted Alliantgroup for business reasons. In early 2008, KLR referred one of its clients to Alliantgroup. In October 2008, KLR contacted Alliantgroup to ask about fees and services for Research & Development Tax Credit Studies. (Docket Entry No. 45, Ex. B). KLR was interested in referring some of its clients to

receive Alliantgroup's consulting services. Between October 2008 and January 2009, KLR and Alliantgroup spoke about these clients and about services that Alliantgroup could provide. (*Id.*).

KLR's Texas contacts do not show general personal jurisdiction. The case law sets a high bar for contacts sufficient for general personal jurisdiction. In *Helicopteros*, the plaintiffs filed suit in Texas against Helicol, a Colombian corporation, on behalf of four United States citizens killed in the crash of a Helicol helicopter. 466 U.S. at 409, 104 S.Ct. 1868. Helicol had significant contacts with Texas, including sending its pilots to be trained there, negotiating a contract in Texas, accepting checks drawn from a Houston bank, and purchasing most of its helicopter fleet in Texas. *Id.* at 416, 104 S.Ct. 1868. The Supreme Court held these contacts insufficient to establish general jurisdiction over Helicol. *Id.*; *see also Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (finding no general jurisdiction even though the defendant routinely arranged and received interline shipments to and from Texas and regularly sent sales people to Texas to develop business, negotiate contracts, and service national accounts); *Wilson*, 20 F.3d at 651 ("Even if [the defendant's] contacts with Texas via his short-lived malpractice insurance arrangement through a Texas law firm and his multi-year pro bono association with the historical society were arguably continuous, we hold that they were not substantial enough to warrant the imposition of general personal jurisdiction over [him]."); *Bearry*, 818 F.2d at 373-76 (holding that the sale of over $250 million of products to seventeen Texas customers over a five-year period did not constitute systematic and continuous contacts with Texas); *cf. Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-448, 72 S.Ct. 413, 96 L.Ed. 485 (1952) (finding general jurisdiction over a Philippine corporation that temporarily relocated to Ohio because the corporation's president resided in Ohio, the corporation's records were kept in Ohio, the board of director's meetings were held in Ohio,

accounts were held in Ohio banks, and all key business decisions were made there); *Holt Oil & Gas Corp.*, 801 F.2d at 779 (upholding general jurisdiction over a nonresident defendant who attended college in, owned real estate in, traveled to, and conducted extensive business dealings in the forum state; his contacts evidenced "constant and extensive personal and business connections with [the forum state] throughout [the nonresident defendant's] adult life").

The record does not show that KLR had continuous and systematic contacts with Texas. KLR referred a client to Alliantgroup and spoke to Alliantgroup about possibly referring other clients. These clients were all located in Rhode Island. KLR does not have an office in Texas, does not have employees in Texas, and does not do business in Texas. There is no evidence in the record that KLR employees have been to Texas.[1] The fact that KLR is a member of an affiliation of CPA firms that has two members located in Texas does not support general personal jurisdiction. KLR's limited involvement with Texas does not provide a basis for general jurisdiction.

### B.    Specific Jurisdiction

Alliantgroup argues that specific jurisdiction is present because KLR's "actions were intentional, tortious, and expressly aimed at Alliantgroup." (Docket Entry No. 45, at 6). Alliantgroup asserts that although KLR knew that Feingold was employed by a Texas company and was under a covenant not to compete with that company, KLR "allowed Feingold, as [its] agent, to freely breach the contract by contacting Alliantgroup's current and prospective clients." (*Id.*). Alliantgroup cites *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 (1984), for the proposition that

---

[1] Although Feingold traveled to Texas as part of his Alliantgroup employment, Alliantgroup does not allege that Feingold has been to Texas on KLR's behalf.

KLR could reasonably anticipate being sued in Texas over Feingold's work for KLR because the intentional, tortious actions were directed at Texas.

In *Calder*, a Florida editor and a Florida writer for the National Enquirer were sued in California for libelous statements made in an article about an actress. The Supreme Court upheld the exercise of personal jurisdiction over the two defendants because they had "expressly aimed" their conduct towards California:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

*Id.* at 788-89. In that case, the reporter and editor collaborating on the allegedly defamatory article did so knowing that the article was for their employer, the National Enquirer, which sold more than 600,000 copies in the forum state every week. *Id.* at 785.

A companion case decided on the same day as *Calder* shows that the important factor was the extent of the defendant's activities, not merely the location of the subject of those activities. In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), the subject of another allegedly defamatory article sued the magazine publishing the story. The suit was not filed where the plaintiff lived, but in a different state with a longer statute of limitations. *Id.* at 772, 778. Noting that the defendant had sold more than 10,000 copies of its magazine every month in the forum state, the Supreme Court held that the defendant's continuous and deliberate exploitation

of the forum state's market for the magazine meant that "it must reasonably anticipate being haled into court there" over the contents of the publication. *Id.* at 781.

The limits of personal jurisdiction based on a tort "directed" to or affecting a forum were explored in a recent Texas Supreme Court case. In *Michiana Easy Livin' Country*, *Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005), the Court expressly rejected personal jurisdiction based on where a tort's effects were felt, as opposed to where the defendant's contacts related to the transaction and events occurred. *Id.* at 784; s*ee also Cerbone v. Farb*, 225 S.W.3d 764, 771-72 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (concluding that the *Holten* court rejected the "effects test" from *Calder*). The defendant in *Holten* was a factory outlet store that did business only in Indiana. The defendant sold a $64,000 motor home to the plaintiff, a Texas resident, over the telephone. The plaintiff initiated the transaction by placing a telephone call from Texas to the defendant in Indiana, sent payment to Indiana, accepted delivery of the motor home in Indiana, and agreed to resolve any disputes in Indiana. The sole basis for jurisdiction in Texas was a false statement allegedly made by the defendant in Indiana during the phone call. *Id.* at 784. The Texas Supreme Court rejected the plaintiff's basis for personal jurisdiction. Distinguishing *Calder*, the Texas Supreme Court noted that focusing on where the defendant allegedly directed a tort incorrectly emphasized the relationship among the *plaintiff*, the forum, and the litigation, rather than among the *defendant*, the forum, and the litigation. The Court emphasized that the minimum-contacts analysis properly focuses "solely on the actions and reasonable expectations of the defendant." *Id.* at 790 (citing *Burger King*, 471 U.S. at 481–82). Looking at where the effect of an alleged "tort was directed," as opposed to the defendant's contacts with the forum relating to the subject matter of the litigation, would improperly conflate the jurisdictional inquiry with the

underlying merits; the nonresident defendant could defeat jurisdiction only by showing that there was no tort. The Court explained that "the important factor [in *Calder*] was the extent of the defendant's activities, not merely the residence of the victim." *Id.* The Court was concerned that fortuitous circumstances, such as the fact that the person on the other end of the phone happened to be calling from Texas, could lead to finding the requisite minimum contacts. The Court held that *Calder* was limited to cases in which the impact of the nonresident's activity was enough to constitute a "substantial presence" in the forum and the nonresident could "reasonably anticipate being haled into court there" because it was well aware of the impact its conduct would have. *Id.* at 789; *see also Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 914 (Tex. App.—Dallas 2005, no pet.) ("*Calder* is interpreted by the Texas Supreme Court as turning . . . importantly, on facts reflecting a 'substantial presence' in the forum.").

The record provides no basis to find personal jurisdiction over KLR based on the direct-a-tort theory. KLR's contacts with Texas relating to this litigation are scant. KLR knew that Feingold's employment agreement with Alliantgroup contained a noncompete provision and that Alliantgroup is a Texas company. But Feingold did not do business in Texas or for Texas clients for either Alliantgroup or KLR. The record shows that KLR hired Feingold, a Massachusetts resident, to work in its Massachusetts office, because of his experience and contacts in New England. Feingold has worked for KLR only in Massachusetts, soliciting clients located in Massachusetts and New York. None of Feingold's work for KLR is in Texas or for a Texas client. KLR's actions in hiring Feingold did not occur in, and were not directed at, Texas. Rather, KLR's actions took place wholly outside Texas.

Any impact on the forum state in this case was far less substantial than in *Calder*. In *Calder*,

the defendants frequently traveled to California on business, and that state was the "focal point" of the defendants' actions. In this case, the only Texas connection is fortuitous by the location of Feingold's former employer. Nor is this case like *Keeton*, in which the defendants' forum-state presence was substantial because of the large number of allegedly defamatory magazines published in the forum state each month. KLR has no substantial Texas presence. Personal jurisdiction in Texas cannot be based solely on the fact that it was foreseeable to KLR that its out-of-state actions could have some effect on a company located in Texas.

Alliantgroup also argues that personal jurisdiction can be based on imputing Feingold's Texas contacts to KLR under an agency theory. Alliantgroup cites *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990), *E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 122 (D. Del. 2000), and *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 552 (Tex. App.—Houston [1st Dist.] 2003, no pet.), for the proposition that an agent's jurisdiction contacts may be imputed to the principal. Alliantgroup contends that Feingold acted on KLR's behalf when he solicited Alliantgroup's clients and prospectI've clients.

Alliantgroup does not indicate what Texas contacts may be imputed to KLR. In responding to Feingold's motion to dismiss, Alliantgroup argued that Feingold visited Texas several times during his employment for Alliantgroup, sent "executed client contracts, agreements, and other various documents to Alliantgroup's Houston office," submitted expense reports to the Houston office for payment, and received and cashed paychecks drawn on a Texas bank.[2] But the record does

---

[2] This court did not examine these contacts when it denied Feingold's motion to dismiss for lack of personal jurisdiction because Feingold's employment agreement with Alliantgroup contained a valid, mandatory forum-selection clause. When a forum-selection clause is at issue, "it is the validity and effect of such clause, and not the party's minimum contacts with the forum, which is determinative." *Mut. Fire, Marine & Inland Ins. Co. v. Barry*, 646 F.Supp. 831, 833 (E.D. Pa. 1986). A mandatory forum-selection clause demonstrates a party's consent to jurisdiction in a specific forum, and courts, absent a showing of fraud or overreaching

not show that Feingold had any Texas contacts after January 13, 2009, when he began working for KLR. Even assuming that Alliantgroup has shown that Feingold is KLR's agent, there are no Texas contacts to impute to KLR.

Alliantgroup alleges that while working on behalf of KLR, Feingold solicited Mini-Circuits and Seaman Paper. Neither of these companies is located in Texas. The record shows that since he began working for KLR in January 2009, Feingold has worked in KLR's Massachusetts office and has marketed and solicited KLR's services only in the New England region. He has not visited Texas, done business in Texas, or done business with a Texas company. Alliantgroup has not alleged facts showing that Feingold did anything on KLR's behalf that had a Texas connection. Feingold's Texas contacts before January 13, 2009 were not done on behalf of KLR. Feingold's acts on behalf of KLR do not subject KLR to personal jurisdiction in Texas.

Because KLR lacks minimum contacts with Texas, this court need not determine whether exercising jurisdiction would offend traditional notions of fair play and substantial justice. *See Southern Copper, Inc. v. Specialalloy, Inc.*, 245 F.3d 791, 2000 WL 1910176, at *4 (5th Cir. 2000) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 329 n.20 (5th Cir. 1996)) ("Because we find that the first due process condition of minimum contacts was not satisfied, we need not address whether the exercise of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice"); *Baldwin v. Household, Int'l, Inc.*, 36 S.W.3d 273, 277 (Tex.

---

in creating the clause, enforce such consent. *Kevlin Servs., Inc. v. Lexington State Bank,* 46 F.3d 13, 15 (5th Cir. 1995). To the extent that a party has consented to personal jurisdiction in a certain forum, application of a forum state's long-arm statute and analysis of a party's contacts with the forum state are unnecessary. *Elec. Realty Assoc., L.P. v. Vaughan Real Estate, Inc.*, 897 F.Supp. 521, 522-23 (D. Kan. 1995). This court's finding that Feingold is subject to personal jurisdiction in Texas was based on Feingold's consent to jurisdiction and not on any of Feingold's alleged Texas contacts.

App.–Houston [14th Dist.] 2001, no pet.) (the court would "not reach the 'fair play and substantial justice' analysis" because plaintiff failed to establish defendant's minimum contacts with Texas).

**IV.     Conclusion**

KLR's motion to dismiss for lack of personal jurisdiction is granted.

SIGNED on August 12, 2009, at Houston, Texas.

                                                    _____
                                                            Lee H. Rosenthal
                                                    United States District Judge